# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59525-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DENNIS CLARKE WILSON, JR., | |
| Appellant. | |

CHE, J. — After receiving a CyberTip about potential child sexual exploitation materials, law enforcement searched Dennis Wilson's property and interrogated him. Wilson was later found guilty of four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct.

Wilson appeals his convictions, arguing that he received ineffective assistance of counsel. Specifically, he argues that counsel rendered ineffective assistance by failing to argue that Wilson's statements during his interrogation were inadmissible because the detective improperly proceeded with questioning after Wilson invoked his right to remain silent. We disagree and affirm.

## FACTS

In 2021, law enforcement received a CyberTip containing images depicting child sexual exploitation, an IP address, telephone numbers, and potential subscriber information. Upon receiving the tip, Detective Chadd Nolan investigated the information and determined that the

information was associated with a real person—Wilson. Detective Nolan obtained a search warrant for Wilson's home, person, and computer devices including his cellphone.

Law enforcement went to Wilson's residence and took him into custody. Wilson had recently finished a graveyard shift and indicated that he was tired. Detective Nolan advised Wilson of his *Miranda* rights and Wilson agreed to proceed with an interview. Detective Nolan questioned Wilson for approximately 45 minutes before transferring him to the police station for further questioning. At the station, Wilson signed a waiver acknowledging that he had been advised of, and understood, his *Miranda* rights.[1]

The State charged Wilson with four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct.

The trial court held a CrR 3.5 hearing on the admissibility of Wilson's statements to law enforcement. At the hearing, Detective Nolan testified that he and other officers went to Wilson's home as part of their investigation. Detective Nolan testified that before he interviewed Wilson, he read him his *Miranda* rights from a pre-printed card, Wilson affirmed that he understood them and that Wilson did not invoke any of those rights. Detective Nolan testified that Wilson indicated he was tired but that, after a few minutes of talking, Wilson became more alert and forthcoming with information.

The State played approximately two minutes of the recording of the interview with Wilson. In the recording, Detective Nolan reads Wilson his rights. Wilson repeatedly comments that he is tired but that he understands his rights. Wilson also told Detective Nolan that he is supposed to be on insulin.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Wilson testified at the CrR 3.5 hearing. He stated that he "kind of" felt like he was forced into the interview. Rep. of Proc. (RP) at 40. Wilson argued that his statements were not voluntary because he was tired and was not feeling well because he needed insulin at the time of the interview, but he did not argue that he had invoked his right to remain silent.

The trial court found that there were no disputed facts. The trial court concluded that Wilson was properly read his *Miranda* warnings and that he knowingly, intelligently, and voluntarily waived his rights. The trial court also concluded that "[d]espite an indication that the defendant was tired, the totality of the circumstances show, by a preponderance of the evidence, that the defendant's statements [] were voluntary." Clerk's Papers at 71. The trial court ruled that the statements were admissible.

During trial, the recording of Wilson's interview was played for the jury. Early in the interview, Wilson identified his phone number and email addresses, which match the number and addresses associated with the accounts used to access and download the child sex abuse materials. At one point during the interview, during a portion not played at the CrR 3.5 hearing, Detective Nolan turned the conversation to screenshots Wilson had taken. The trial court's transcript of Wilson's statements to Detective Nolan, as played for the jury reads as follows:

> [SERGEANT NOLAN]: Okay. What else, man? I mean, why else would I be here—Google's saying that they found some screenshots that you took, that you saved to your Google Drive, Google Photos account. What happened there?
>
> [WILSON]: I don't know.
>
> [SERGEANT NOLAN]: What do you mean, you don't know?
>
> [WILSON]: I'm tired.
>
> [SERGEANT NOLAN]: I get that you're tired.

[WILSON]: That's all I'm going to say. I'm really tired. That's all I'll say. Sorry.

[SERGEANT NOLAN]: It's okay. But I will tell you this: I'm not going away. All right?

[WILSON]: I know you're not.

[SERGEANT NOLAN]: And I will tell you that—you know, you're a smart guy. You know, you're able to answer my questions. I do feel—I'm not calling you a liar or anything, but I do feel like you're playing the tiredness thing.

[WILSON]: No, I'm just really tired.

RP at 95-96.

The State contends that the transcript is flawed and that Wilson actually said "I'm sorry but I don't know what else to say. Ah f[]ck it's hot in here. (sound of zipper zipping). Just want to sleep, (laugh noise). Sorry, I (crosstalk/indecipherable)." Br. of Resp't at 5. The State designated the recording as part of the record on appeal, enabling this court to review the audio itself.

Upon review of the audio, the first part of Wilson's answer is indiscernible; he says he is tired and then mumbles something quietly before the sound of a zipper is heard, followed by "I just want to sleep" and a laughing sound. Ex. 22 at 15:50 min. through 16:13 min. The transcription of the interview contained in the verbatim report of proceedings is also clearly inaccurate at several other points during the interview, beyond the examples identified in the State's brief.

The interview continued, and Wilson explained that he was not actively seeking out pictures of children but that around nine to ten percent of the time masturbates to depictions of

4

minors engaged in sexually explicit conduct.[2]  The State introduced evidence of multiple images of children engaged in sexually explicit conduct that were found on Wilson's devices.

The jury found Wilson guilty as charged.

Wilson appeals.

ANALYSIS

Wilson argues that he received ineffective assistance of counsel based on counsel's failure to argue that his interview statements were inadmissible because Detective Nolan refused to honor Wilson's invocation of his right to remain silent.  We disagree.

To show ineffective assistance of counsel, the appellant must show that their attorney's performance was deficient and the deficient performance prejudiced the appellant.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013).  Failure to establish either prong is fatal to the claim.  *Strickland*, 466 U.S. at 700.

To prove the first prong, deficient performance, the petitioner must prove that counsel's performance fell "below an objective standard of reasonableness based on consideration of all the circumstances."  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  We begin by strongly presuming that defense counsel's performance was not deficient.  *Id*. at 458.  To overcome this presumption "a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance."  *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).  We apply

---

[2] The State contends that "nine to ten percent" is an error in the transcription at trial and that Wilson actually said "not even ten percent of the time."  Br. of Resp't at 9.

"exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot" form the basis of an ineffective assistance claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

If an appellant argues that their trial counsel provided ineffective assistance by failing to move to suppress evidence, the appellant will prevail only if they show "that the motion likely would have been granted." *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017). "Not every possible motion to suppress has to be made," and "[c]ounsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded." *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). "[A] claim of ineffectiveness due to failure to move to suppress on a particular basis can be undermined to some degree if counsel moved to suppress on another ground" because a motion brought on one basis but not another suggests that counsel made a reasoned, strategic decision. *Id*. at 15.

Here, counsel made the reasoned, strategic decision to challenge the admissibility of Wilson's statements on the basis of voluntariness instead of arguing that Wilson invoked his right to remain silent. During the beginning of the interview, Wilson repeatedly told Detective Nolan he was tired instead of directly answering questions. At the CrR 3.5 hearing, Wilson testified that he had gotten very little sleep before being woken up by Detective Nolan, that he had not taken his medication, and that he felt like he was forced to participate in the interview. These facts supported an argument, albeit unsuccessfully, that Wilson's statements were not made voluntarily. *See id*. at 15.

In contrast, Wilson testified at the CrR 3.5 hearing but did not testify that he intended to remain silent or at any point invoked his right to remain silent. And the record is unclear

whether Wilson actually said at one point "that's all I will say" or if he said "I don't know what else to say." At best, Wilson mumbled something incoherent, reiterated that he was tired, and then continued to talk to Detective Nolan. Ex. 22 at 15:50 min. through 16:13 min. Under these circumstances, counsel's decision to challenge the admissibility of his statements based on voluntariness and not Wilson's alleged invocation of his right to remain silent was a legitimate strategic decision that does not support a claim of ineffective assistance of counsel.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Price, J.